IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| ANTHONY BRAY, | |
| Plaintiff, | |
| v. | 2:23-CV-197-Z-BR |
| TRANSUNION, LLC, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants TransUnion, LLC, Experian Information Solutions, Inc., and Equifax Information Services, LLC's (collectively, "CRA Defendants") Joint Motion for Judgment on the Pleadings ("Motion") (ECF No. 35). After reviewing the Complaint, parties' briefing, and the relevant law, the Court **GRANTS** the Motion. Therefore, Plaintiff's claims against CRA Defendants are **DISMISSED** from this case **WITH PREJUDICE**.

### BACKGROUND

Plaintiff and his then-wife opened an American Honda Finance ("Honda") account in June 2021, with auto payments to be deducted monthly from their joint checking account. ECF No. 1 ¶¶ 19–20. Plaintiff alleges that after he and his wife divorced, she "assumed responsibility" for the Honda vehicle payments. *Id.* ¶ 20. To that end, she arranged for Honda to withdraw funds from her personal account in March 2023. *Id.* ¶ 21.

Instead, Honda continued to withdraw from the former couple's joint account. *Id.* ¶ 24. Because that account was no longer active and lacked adequate funds, Honda notified Plaintiff that there was a late-payment notation on his credit reports. *Id.* ¶ 23. He then "immediately made all the payments to bring the Account current" in July 2023. *Id.* ¶¶ 27, 23.

Meanwhile, Honda furnished Plaintiff's late-payment notation to CRA Defendants, who then "prepared and issued credit reports" on that basis. *Id.* ¶¶ 31, 30. According to the Complaint, CRA Defendants "all list a 30-day late payment notation for June 2023 and 60-day late payment notation for July 2023 for the Account." *Id.* ¶ 37. One of the CRA Defendants informed Plaintiff that it would not change the listing after he submitted a formal dispute on July 25, 2023. *Id.* ¶¶ 48, 40.

### LEGAL STANDARD

CRA Defendants move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Under that rule, "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."

Rule 12(c) motions are subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2018). To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co., LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010). A plausible claim to relief "must be enough to raise a right to relief above the speculative level." *Id.*

This standard is plaintiff-friendly. *See id.* (stating that the Court must "accept all well-pleaded facts as true and construe the compliant in the light most favorable to the plaintiff."). Even so, the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.*

2

ANALYSIS

Plaintiff sues CRA Defendants pursuant to the Fair Credit Reporting Act ("FCRA" or "Act"), found at 15 U.S.C. § 1681 *et seq. See* ECF No. 1 ¶¶ 66, 73 (alleging claims under Sections 1681e and 1681i, respectively). The FCRA, originally enacted as Title VI of the Consumer Credit Protection Act in 1970,[1] exists to ensure "fair and accurate credit reporting." 15 U.S.C. § 1681(a)(1). To that end, it governs the conduct of consumer reporting agencies, users of those consumer reports, and the furnishers of consumer information. *See, e.g., id.* §§ 1681e, 1681i, and 1681s-2.

Section 1681e governs credit reporting agencies ("CRAs").[2] Under that subsection, "[w]henever a consumer reporting agency" like CRA Defendants "prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Id.* § 1681e(b).

The FCRA's accuracy requirement in the Fifth Circuit mandates CRAs to preclude both technically inaccurate information *and* technically accurate information that could otherwise mislead a third party. *See Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890, 895 (5th Cir. 1998) ("A credit entry may be 'inaccurate' within the meaning of [Section 1681e(b)] either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."). This reading accords with every other circuit that has addressed the issue. *See, e.g., Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020) (holding that "information must be factually

---

[1] Pub. L. 91-508, 84 Stat. 1114.

[2] "The term 'consumer report' means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purposes of serving as a factor in establishing the consumer's eligibility for," inter alia, "credit or insurance to be used primarily for personal, family, or household purposes." 15 U.S.C. § 1681a(d)(1)(A).

3

true and also unlikely to lead to a misunderstanding"); *accord Carvalho v. Equifax Information Servs., LLC*, 629 F.3d 876, 890–92 (9th Cir. 2010) (incorporating factual inaccuracy and likelihood to mislead as dual criteria under Section 1681i).

Plaintiff argues that because CRA Defendants continue to list his late-payment notations on their consumer reports, despite Plaintiff's alleged lack of responsibility for them, CRA Defendants failed to ensure "maximum possible accuracy" under Section 1681e(b) and further failed to "conduct a reasonable reinvestigation" under Section 1681i(a)(1)(A). *See generally* ECF Nos. 1, 41.

CRA Defendants deny the foregoing liability in the instant Motion. First, they argue that because their consumer report is both technically accurate and is in no way misleading to third parties, they cannot have violated Section 1681e(b)'s "maximum possible accuracy" requirement. Second, they argue that Plaintiff's Complaint represents a collateral attack on the legal validity of his debt-obligation to Honda, which is materially distinct from the kinds of factual inaccuracies of concern under the FCRA. *See generally* ECF Nos. 36, 44.

### I. CRA Defendants' consumer report was accurate under Section 1681e(b).

CRA Defendants issued credit reports stating that Plaintiff was late on payments for April, May, and June of 2023. ECF No. 1 ¶ 30. Plaintiff alleges that these reports "included inaccurate and misleading information" under Section 1681e(b). *Id.* Plaintiff is incorrect on both counts.

#### A. The consumer reports were technically accurate.

As to technical inaccuracy, the Complaint is clear that the Honda payments were late and that Plaintiff repaid them. ECF No. 1 ¶¶ 27, 23. However, Plaintiff argues that it was inaccurate for CRA Defendants to include this late payment on their consumer reports because Plaintiff was not responsible for the debt. ECF No. 41 at 19. That is because, Plaintiff argues, "the divorce

4

allocates *responsibility* of the debt to Plaintiff's ex-wife." *Id.* at 20. That might be so as between Plaintiff and his ex-wife.

But it is not true as between Plaintiff and Honda, and that is what matters for purposes of Section 1681e(b). In Texas, a debt incurred during marriage is a presumed community debt and becomes a community obligation at divorce. *McCoy v. McCoy*, No. 02-15-00208-CV, 2016 WL 3659122, at *2 (Tex. App.—Fort Worth July 7, 2016, no pet.) (citing *Marie v. Velasquez*, No. 04-08-00271-CV, 2008 WL 5082989, at *1 (Tex. App.—San Antonio Dec. 3, 2008, pet. denied) (mem. op.)). Plaintiff incurred the Honda debt while married, and he therefore is jointly responsible for that debt post-divorce.

Plaintiff's divorce decree cannot alter that responsibility. *See Doe v. Carroll*, No. 03-08-00556-CV, 2009 WL 1811002, at *6 (Tex. App.—Austin June 23, 2009, no pet.) (noting that a divorce "decree merely divides the responsibility for repayment of the [community debt] as between the parties and affects only their rights to seek contribution from each other in satisfaction of their joint obligation") (quoting *Shelton v. Shelton*, No. 01-02-01009-CV, 2003 WL 22511463, at *2 (Tex. App.—Houston [1st Dist.] Nov. 6, 2003, no pet.) (mem. op.)). Here, like in *Doe* and *Shelton*, Plaintiff cites an agreement with his wife requiring her to assume payment responsibilities for their joint-debt. ECF No. 1 ¶¶ 20, 33. And Plaintiff does not challenge this line of authority regarding his joint-obligation to third-party creditors. ECF No. 41 at 20–21.

So, CRA Defendants were not factually inaccurate to generate consumer reports noting that Plaintiff was "late" on the Honda payments. He had a joint responsibility for that debt, payments were late on it, and Plaintiff ultimately repaid them. The only question is whether CRA Defendants were materially *misleading* by excluding the ex-wife's assumption of that obligation.

### B. The consumer reports were not materially misleading.

They were not. Plaintiff argues that it "is materially misleading for [CRA] Defendants to continue reporting information concerning the Honda debt while simultaneously omitting crucial information surrounding indemnification of Plaintiff's liabilities after his divorce." *Id.* at 9. Plaintiff's three authorities suggest that *furnishers* might have obligations to report knowledge of a divorce decree under Section 1681s-2. *Hillis v. TransUnion, LLC*, 969 F. Supp. 2d 419, 420–21 (E.D. Pa. 2013); *Williams v. Experian Information Solutions, Inc.*, No. C22-5840-MJP, 2024 WL 643197, at *3 (W.D. Wash. Feb. 15, 2024); *cf. Radley v. Experian Information Solutions, Inc.*, No. 1:17-CV-02755, 2018 WL 1513576, at *3 (D.N.J. March 26, 2018) (finding that Plaintiff did not properly plead a Section 1681s-2(b) cause of action against furnisher).

But CRA Defendants are not furnishers under the FCRA — they are CRAs. That matters here because the FCRA imposes different reporting requirements for furnishers and CRAs. Furnishers, for example, must include a dispute notation for the CRAs if they receive a direct consumer dispute. 15 U.S.C. § 1681s-2(a)(3). CRAs must note that dispute on their consumer reports only *after* receiving notice from the furnisher — in this case, Honda. *Id.* § 1681c(f). Honda was responsible for notating Plaintiff's dispute here, not CRA Defendants.

Moreover, a consumer report omitting the divorce decree is not misleading under the FCRA because the Honda debt was still legally Plaintiff's. *See Hom v. TransUnion, LLC*, No. 23-CV-81513, 2024 WL 3829971, at *1 (S.D. Fla. August 15, 2024) (noting that "it is not materially misleading for [TransUnion] to report that the Plaintiff was not making payments on debts she was legally obligated to pay" when ex-husband has personally assumed responsibility for making those payments).

6

At worst, the consumer report was incomplete, but the Fifth Circuit has "decline[d] . . . to construe Section 1681e(b) in a way that would require completeness without regard to whether the disputed entry was misleading." *Sepulvado*, 158 F.3d at 896. To require completeness would impose a pre- *and* re-investigation obligation onto CRAs when the FCRA imposes only the latter. *Id.*; *see* 15 U.S.C. § 1681i (reinvestigation requirements); *see also Carvalho*, 629 F.3d at 891 (noting that "credit reporting agencies are not tribunals. They simply collect and report information furnished by others."). Plaintiff's proposed approach, by contrast, "ignores both the statutory balance adopted in the 'reasonable procedures' language of Section 1681e(b) and the effect of other statutory procedures, which are intended to govern the resolution of a consumer dispute about the content or completeness of an entry." *Sepulvado*, 158 F.3d at 896.

Plaintiff essentially wants CRA Defendants to "shade[] every credit history in their files in the best possible light for the consumer." *Carvalho*, 629 F.3d at 892; *see Braun v. TransUnion LLC*, No. 19-CV-06098, 2019 WL 13083348, at *2 (C.D. Cal. Oct. 19, 2019) ("A [CRA's] failure to provide information to explain the significance of an otherwise accurate report entry is not the type of misleading omission . . . sufficient to fulfill the inaccuracy element of [an FCRA claim]."). But that is not their job. CRA Defendants were not misleading under the FCRA in reporting that Plaintiff was legally obligated to pay the Honda debt.

**II. CRA Defendants owed no duty to reinvestigate under Section 1681i(a)(1)(A).**

If a consumer like Plaintiff disputes "the completeness or accuracy" of any item of information in his file, the Act permits him to notify the agency directly and requires the agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information . . . ." 15 U.S.C. § 1681i(a)(1)(A).

7

Factual inaccuracies, not legal disputes, trigger CRA reinvestigation duties. *See Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 270 (2d Cir. 2023) ("Every other circuit . . . has agreed: inaccuracies that turn on legal disputes are not cognizable under the FCRA."); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239 (10th Cir. 2015) (noting that reasonable procedures under Section 1681e(b) do "not require [CRAs] to resolve legal disputes about the validity of the underlying debts they report"). That is because CRAs "simply collect and report information furnished by others," best situating reinvestigation claims for factual inaccuracies. *Carvalho*, 629 F.3d at 891.

Now, "[a] clear line has not been drawn between legal and factual inaccuracies in the FCRA context." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567–68 (7th Cir. 2021). But other circuits are at least clear that "if a legal question is sufficiently settled so that the import on a particular debt is readily and objectively verifiable, the FCRA sometimes requires that the implications of that decision be reflected in credit reports." *Mader*, 56 F.4th at 271; *see id.* at 270–71 (citing cases for the proposition that "misreporting the clear effect of a bankruptcy discharge order on certain types of debt is a cognizable inaccuracy under the FCRA").

In practice, CRAs must report and reinvestigate when debts have already been discharged. In *Losch*, the CRA improperly reported a bankruptcy debt because "Losch was no longer liable for the balance nor was he 'past due' on any amount . . . ." *Losch v. Nationstar Mortgage, LLC*, 995 F.3d 937, 945 (11th Cir. 2021). And in *Morris*, the CRA improperly reported a consumer debt without noting that the debt was previously discharged in bankruptcy in violation of Section 1681e(b). *Morris v. Experian Info. Sols., Inc.*, 478 F. Supp. 3d 765, 771 (D. Minn. 2020).

Plaintiff would apply the foregoing authority to the instant case. First, he argues that "[i]t is no great feat of the imagination — or of legal reasoning, even for the layman — to surmise that

8

Plaintiff is indemnified under [the divorce decree]." ECF No. 41 at 21. Second, he argues that for CRA Defendants to report otherwise "suggests a degree of culpability that is simply absent from the case," given Plaintiff's ex-wife's efforts in adhering to the terms of the divorce decree. *Id.* at 24. Third, he argues that Honda was at fault for the alleged inaccurately reported information. *Id.*

Plaintiff is mistaken on each theory. First, the divorce decree presents complicated legal questions that CRA Defendants are neither suited nor required to decide. Considering the divorce decree in isolation, perhaps CRA Defendants would have concluded that Plaintiff is not liable for the Honda debt. But they could not properly make that determination without reference to Texas law governing the relationship between community debts incurred during marriage and subsequent divorce decrees. This is hardly the type of "readily and objectively verifiable" issue that renders the divorce decree a fact-question. *Mader*, 56 F.4th at 271.

Second, the plaintiffs in *Losch* and *Morris* were in fact discharged from their debt obligations. But here, Plaintiff is exactly the opposite of his proffered authorities because unlike those Plaintiffs, he still remains bound for the Honda debt. *See* Section I.A *supra* (collecting Texas authorities on the relationship between divorce decrees and community debts incurred during marriage).

Third, Plaintiff's statement that he "is indemnified" is irrelevant. ECF No. 41 at 21. The issue for CRA Defendants' reinvestigation duties under Section 1681i is not whether Plaintiff might have a cause of action against his ex-wife for indemnity. Rather, it is whether Plaintiff is still liable for the Honda debt. That is a legal question that CRA Defendants could not determine without recourse to Texas state law, best situating Plaintiff's dispute as a legal issue and not as a factual inaccuracy.

Fourth, even if Honda were at fault for the alleged inaccuracies, "circuit and district courts around the country have dismissed actions against CRA's similar to the one at hand, in which consumers alleged nonparty furnishers were at fault for the reported information being inaccurate." *Arniella v. TransUnion, LLC*, No. 21-CV-23694-DLG, 2022 WL 2349016, at *2 (S.D. Fla. June 2, 2022). In *Braun*, for example, CRA reporting based on a furnisher error was not misleading even though "[p]laintiff's payment was unquestionably late; she merely disputes that the lateness was not her fault." 2019 WL 13083348, at *3. So too here, meaning that CRA Defendants owed no reinvestigation duties under the FCRA.

In conclusion, CRA Defendants were not required to reinvestigate Plaintiff's dispute under Section 1681i because it involves legal questions that are not cognizable under the FCRA. *Mader*, 56 F.4th at 270; *Wright*, 805 F.3d at 1239; *Carvalho*, 629 F.3d at 891. Plaintiff contests his liability for the Honda debt vis-à-vis the divorce decree. But that argument is nothing more than an impermissible and incognizable collateral attack on the debt itself. *See Carvalho*, 629 F.3d at 891 ("[C]ourts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims.").

**CONCLUSION**

For the foregoing reasons, CRA Defendants' Motion is **GRANTED**. Therefore, Plaintiff's claims against CRA Defendants are **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

September 11, 2024

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE